GEORGE HYLAND et al., as Administrators, etc., Appellants, *v.* MARY ANN BAXTER et al., Respondents.

A surrogate, on settlement of the accounts of an executor or administrator, who has made advances for the support and maintenance of a minor entitled to a share in the estate, has jurisdiction to determine, upon equitable principles, a claim for such advances, and an allowance is proper where the expenditure for which reimbursement is so sought is such as would have been authorized by the court had application been made in advance.

Where, therefore, in an action by an administrator to have advances made by him for the support of the testator's minor children, applied in deduction of the sums adjudged against him on settlement of his accounts by the surrogate on account of the distributive shares of said minors, it appeared that in the account, presented by the administrator before the surrogate, the advances were set out and a credit claimed for the amount thereof, but the claim was disallowed,—*Held*, that the decision of the surrogate thereon was *res adjudicata;* and so, conclusive upon the parties in this action.

(Argued March 13, 1885; decided April 14, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made at the January term, 1884, which affirmed a judgment in favor of defendants, entered upon the report of a referee. (Reported below, 31 Hun, 354.)

This action was brought originally by George Hyland, the present plaintiffs' intestate, for an allowance to him as administrator of the estate of Bernard Baxter, deceased, for advances made by him for the maintenance of the minor children of his intestate.

Bernard Baxter died intestate May 27, 1862, leaving a widow and three minor children, Mary, aged about eight years, Bernard, aged about two years, and Ella, aged about seven months, and a small personal estate. George Hyland (plaintiff's intestate) and Bridget Baxter, the widow, were appointed administrators.

No guardian was appointed for the children until May, 1872, when one Zimmer was appointed, who soon afterward instituted proceedings before the surrogate of Livingston county, where the intestate resided at the time of his death, for an accounting by the administrator. Hyland, on the return of the citation, appeared and presented his account. It was referred to an auditor to examine and report. It appeared on the accounting that after payment of debts and expenses of administration, and the distributive share of the widow, there remained of principal the sum of $827.50 for distribution under the statute to the three minor children of the intestate, not allowing the credit hereinafter mentioned. The children, after the death of Bernard Baxter, in 1862, continued to live with their mother, Bridget Baxter, the co-administrator of Hyland, who cared for, supported and maintained them as one family for several years, the means for such support being supplied by Hyland at her request, and which were intended by him as an advancement upon their distributive shares in the estate of their father. These advancements were set out in the account of Hyland presented to the surrogate, and he claimed that they should be credited to him in the accounting.

The auditor to whom the account was referred for examination reported that Hyland had paid and delivered to Bridget Baxter all the avails of the estate for which he was chargeable, and that the distributive shares of the minors were expended by her in providing them necessaries during their minority, and under such circumstances that, if she had been their general guardian, the expenditure would have been allowed her on her accounting as such guardian. But the auditor further reported that in his opinion Bridget Baxter had no right, as administrator of Bernard Baxter, to make such payments, and that the Surrogate's Court had no power, upon the accounting of the administrators, to allow them as a credit on their account. The surrogate seems to have adopted the conclusion of the auditor, and pending an appeal to the Supreme Court from his decree disallowing the claim, this action was brought to have the amount advanced and expended for the support of the minor children applied in deduction or extinguishment of the sums adjudged against the administrators on account of the distributive shares of the children. The appeal from the decree of the surrogate is still pending and undetermined.

*William F. Cogswell* for appellants. Even in an accounting by the guardian, the surrogate would have no authority to allow expenditures made before his appointment. (*Clowes* v. *Van Antwerp*, 4 Barb. 418.) And as to expenditures made by a guardian after his appointment, the surrogate cannot allow or pass on the same until the infant becomes of age, though, prior to such majority, the surrogate is clothed with authority by statute to require an annual account and the filing thereof in his office. (*Draker* v. *Anderson*, 37 Barb. 168.) The relief demanded in the complaint, though without the statutory jurisdiction of the surrogate, is within the equity jurisdiction of the Supreme Court. (*In re Kane*, 2 Barb. Ch. 375; *Wilkes* v. *Rogers*, 2 Johns. 566; *Fonda* v. *Penfield*, 56 Barb. 504; *Brandon* v. *Brandon*, 4 N. Y. S. C. 385.) There being no concurrent remedy at law, the six-years limitation cannot apply. (*Appleby* v. *Brown*, 24 N. Y. 143; *Rundle* v. *Allison*, 34 id. 180; *Hubbell* v. *Sibley*, 50 id. 468; *Mann* v. *Fairchild*,

14 Barb. 558.) No right of action accrued against the beneficiaries or any person standing for them, until the appointment of the guardian. (*Van Nest* v. *Lott*, 16 Abb. 130; *Van Tassell* v. *Van Tassell*, 31 Barb. 439.) The case at bar comes within the lines of adjudicated cases as well as within the general principles of equity. (*Hill* v. *Sandford*, 11 Hun, 536; *In re Bostwick*, 4 Johns. Ch. 100; Kent's Com. 103; *In re Kane*, 2 Barb. Ch. 375; *Fonda* v. *Penfield*, 56 Barb. 503; *Brandon* v. *Brandon*, 4 N. Y. S. C. 385.)

*Chas. J. Bissell* for respondents. This action cannot be maintained. The surrogate's decree and the appeal therefrom duly pleaded are a bar to this action. (*Schenck* v. *Dart*, 22 N Y. 420; *Robinson* v. *Raynor*, 28 id. 494.) This action is barred by the statute of limitations. (*Van Hook* v. *Whitlock*, 3 Paige, 409; *Rosevelt* v. *Mark*, 6 Johns. Ch. 266; *Miller* v. *McIntire*, 6 Peters [U. S.], 61; *Borst* v. *Carey*, 15 N. Y. 505; *Van Tassel* v. *Van Tassel*, 31 Barb. 439.) There is no equity in the plaintiff's alleged cause of action, and the complaint was properly dismissed upon the merits. (*Patterson* v. *Brown*, 32 N. Y. 81; *Martin* v. *Wagner*, 60 Barb. 435.) As the proof shows that the plaintiff handed over these moneys to the widow in known violation of his duty as administrator, and in known violation of the statute, well knowing that she was insolvent, and did not intend to account for it as administrator, equity will not relieve. (*Sherman* v. *Wright*, 49 N. Y. 227; *Howell* v. *Mills*, 53 id. 322; *Gillett* v. *Phillips*, 13 id. 114.) No court of equity will protect even a guardian in expending more than the interest of his ward's money. If permitted to go further it must only be in a case of absolute necessity, of which the court must be fully satisfied. (*Walker* v. *Witherell*, 6 Ves. 472; 2 Perry on Trusts [3d ed.], 212, § 618; *Lee* v. *Brown*, 4 Ves. 362.) There is but one way for an administrator to manage and close up an estate, and that is the way pointed out by the law. If he departs from that way and pursues an unauthorized course, he alone must be the sufferer for it. (*Hannahs* v. *Hannahs*, 68 N. Y. 610.) The unlawful

and unauthorized course adopted by the plaintiff in the disposition of these funds, having made it impossible to determine the precise rights of each one of the infants, he himself must be the sufferer if any one is harmed. (*Brandon* v. *Brandon*, 66 N. Y. 401 ; *Hannahs* v. *Hannahs*, 68 id. 612.) Where the property rights of infants are concerned, courts will exercise the most vigilant care in protecting their interests, and will hold guardians and all who are engaged in managing or disposing of their property to a rigid adherence to principles of good faith not only, but to a strict performance of every duty. (2 Perry on Trusts [3rd ed.], 212, § 618 ; *Howell* v. *Mills*, 53 N. Y. 326 ; *Sherman* v. *Wright*, 49 id. 227.)

ANDREWS, J. The claim of the original plaintiff to be allowed the amount advanced by him to his co-administrator, and applied by her to the support and maintenance of the infant children of Bernard Baxter, the intestate, was presented to the surrogate on the accounting of the administrators, and was disallowed by his decree in that proceeding. It was in the nature of a claim for an allowance for past maintenance, and if the power of a court of equity to make such allowance, invoked in this action, pertained to the surrogate on the accounting, his determination is *res judicata*, and is conclusive upon the parties until set aside or reversed, however erroneous it may have been. (*Vanderpoel* v. *Van Valkenburgh*, 6 N. Y. 190 ; *In re Hood*, 90 id. 512.) The principle of *res judicata* supports the conclusiveness of a judgment when the same matter is subsequently called in question between the parties in a collateral action, whether the question was rightly or wrongly decided, on the principle of quieting contentions, and securing the orderly administration of justice. If, therefore, the surrogate had jurisdiction to pass upon the merits of the claim for past maintenance, this action cannot be maintained, and the plaintiffs must seek their remedy in the prior proceeding.

The power of a court of equity to make an allowance out of the estate of infants for past maintenance was carefully examined and affirmed by the chancellor in *Matter of Bostwick* (4 Johns.

Ch. 105), where the mother of certain infants entitled to the principal of a sum of money on her death, presented her petition praying for an order that a portion of the principal belonging to the infants should be applied to reimburse her for their past maintenance and to discharge of debts necessarily incurred by her for that purpose, and also to provide for their maintenance in the future. The chancellor granted the relief in both aspects, and referring to the ruling of Lord THURLOW in *Andrews* v. *Partington* (3 Bro. 401), that no allowance could be made to a parent for the past maintenance of an infant, said: " It would lead to great inconvenience, for though the wants of the infant might be ever so pressing, he could not receive any maintenance (charity excepted) without the expense of a suit and reference to a master." It is not necessary at the present time to consider the rules which govern courts of equity in exercising this jurisdiction, but the general principle has been applied in many cases, that an allowance for past maintenance may be made to executors, trustees, or guardians, upon an accounting or upon petition, even when it requires a breaking in upon the capital, provided the expenditure for which reimbursment is sought would have been authorized by the court if an application had been made in advance. (*Lee* v. *Brown*, 4 Ves. 362; *Greenwell* v. *Greenwell*, 5 id. 194; *Sisson* v. *Shaw*, 9 id. 285; *Prince* v. *Hine*, 26 Beav. 634; 2 Wms. on Exrs. 1272; 2 Lead. Cases in Eq. 720.)

There is no express power conferred upon a surrogate to make an allowance for past maintenance upon an accounting by executors or administrators. But he is authorized to direct and control the conduct, and settle the accounts of executors and administrators, and to administer justice in all matters relating to the affairs of deceased persons according to the statutes of this State. (2 R. S. 220, § 1, subd 3, 6.) The limitation, following the enumeration of the powers granted to the surrogate in the section cited, that " they shall be exercised in the cases and in the manner prescribed by the statutes of this State," does not confine the exercise of his jurisdiction to such acts only as are expressly authorized, but his jurisdiction is

subject to the general principle governing the construction of powers, that an authority conferred for a particular purpose, carries with it by implication such incidental powers as are requisite to the complete execution of the power expressly granted (*Seaman* v. *Duryea*, 11 N. Y. 324; *Sipperly* v. *Baucus*, 24 id. 46; *Riggs* v. *Cragg*, 89 id. 479.) The general power granted to the surrogate in the section cited, to direct and control the conduct and settle the accounts of executors and administrators, is supplemented by specific provisions in the article, relating to the rendering and settlement of their accounts and the distribution of the estate. The seventy-first section (2 R. S. 95) declares that the surrogate in his final decree on an accounting, shall settle and determine all questions concerning any debt, claim, legacy, bequest, or distributive share, to whom the same shall be payable, and the sum to be paid to each person. There seems to be no good reason arising out of the nature of the question, or the constitution of the tribunal, which should deprive a surrogate upon a settlement of the account of an executor or administrator where advances have been made for maintenance, to determine upon equitable principles a claim for an allowance. On the contrary it would seem to be a very proper place and time to have the question determined, thereby saving expense and preventing further litigation. It is true that an administrator in making advances acts without authority and at his peril, but this is true in every case where a parent, or one in *loco parentis*, or a trustee, or guardian makes advances not previously sanctioned by the court or by the instrument creating the trust, and comes to the court for relief. The fact that the question is an equitable one, and depends upon equitable principles, is not a ground of objection to the jurisdiction. The Surrogate's Court is a court of limited powers and jurisdiction, but it has jurisdiction to determine questions either legal or equitable arising in the course of proceedings in the execution of powers expressly conferred, and which must be decided therein. (*Jumel* v. *Jumel*, 7 Paige, 591 ; *Boughton* v. *Flint*, 74 N. Y. 476; *Riggs* v. *Cragg, supra.*) In the case last cited it was held that where the right to a legacy depended

upon the construction of a will, the surrogate has jurisdiction to construe the will, as incident to his power to make distribution, although he has no general jurisdiction in the construction of wills.   It has been held that a surrogate cannot decree a set off of judgments, or dispute the validity of a judgment, or settle disputed claims.   (*Stilwell* v. *Carpenter*, 59 N. Y. 414; *Mc-Nulty* v. *Hurd*, 72 id. 518; *Tucker* v. *Tucker*, 4 Keyes, 136.) These cases proceeded upon special grounds not necessary to be stated.   But a surrogate may adjust a claim of the executor against the estate, whether legal or equitable. (*Jumel* v. *Jumel, supra; Boughton* v. *Flint, supra.*)   In the present case, the surrogate was called upon to settle the accounts of the administrators, and decree distribution of the estate in their hands, and the statute made it his duty in the proceeding to settle and determine all questions concerning any claim or distributive share.   The statute in some cases expressly confers jurisdiction upon the surrogate to direct the application of an infant's property to his support.   (2 R. S. 91, § 49.)   It also authorizes testamentary trustees to settle their accounts before the surrogate, and declares that his decree on a final settlement shall have the same force and effect as the decree or judgment of any other court of competent jurisdiction, as to all " matters relating to such trust," embraced in the accounts, or litigated, or determined on the settlement.   (Laws of 1850, chap. 272.)   In an accounting, under this statute, the surrogate could, we think, pass upon and determine a claim made by the trustee for allowance for past maintenance of an infant *cestui que trust.*   We are also of opinion that the same power existed in the present case, as incident to the power of the surrogate to settle the accounts of administrators and decree distribution among the next of kin.   This conclusion leads to an affirmance of the judgment.   The objection to the allowance to Hyland of sums necessarily expended for the support of the infants, seems very inequitable.   The General Term on the appeal from the surrogate's decree may be able to find some way of doing justice between the parties.

The judgment should be affirmed, but without costs to either party on this appeal.

All concur.

Judgment affirmed.