Ransom, S.
—Testator died August 4, 1884; by his will he appointed Lemuel B. Clark executor and his wife executrix. On August 19, 1884, the executrix, at the request of Clark, renounced her right to letters. On October 15, 1884, the will was duly probated and letters were issued to Clark as sole executor. Clark died June 9, 1886. On December 31, 1886, the wife of testator filed a retraction of her renunciation and an order was entered declaring said renunciation void. On January 7,1887, letters testamentary were issued to her as sole executrix. Clark left a will appointing his wife executrix, which was probated July 7, 1886, and letters were issued to her.
*735 The petitioner, the widow of Fithian, claims that certain sums and mortgage were received by Clark, as executor of Fithian, out of which he invested $5,000 in his brother’s note, and that the interest on said note has been paid to Mary J. Clark.
On May 2, 1885, an order was made to advertise for claims against the Fithian estate, and notices duly published by Clark.
Petitioner says that all the money accounted for is $1,714.25.
Clark also presented a note purporting to have been made by Fithian to him, for $600.
Proceedings for an accounting were commenced by Mrs. Fithian againt Clark estate, July 9, 1886, and adjourned to October 14, 1886, when Mary J. Clark filed an account. On October 20, 1886, Mrs. Fithian filed objections to same, which were sustained, and Mrs. Clark was directed to file an amended account, which was filed June 9, 1887, and objections to same were filed June 23, 1887.
In the account Mrs. Clark says her husband had received the sum of $30,000, as surviving partner of Fithian. The objection of Mrs. Fithian was, that he received the sum as executor, and not as partner. The account and objections were sent to a referee. Before the referee, Mrs. Fithian sought to prove by Mrs. Clark, that certain proceeds of the Fithian estate had been invested- by Clark in certain securities for her benefit. This, the referee refused to allowy as no such issue was raised by the objections filed; at least," so I infer, the record of proceedings not having-been produced.
This application is for an order that Mrs. Clark be examined before said referee touching her receipts and disbursements in the Fithian" estate, or touching any other matter relating to her testator’s or her administration of said estate, or any act done by her under color of her husband’s letters, and that the referee be directed to examine same and report, under the provisions of the order of reference.
The only question on this application is, whether■ the objectors shall be permitted to file a further objection to the account, so that they may present an issue which will entitle them to the examination of Mrs. Clark upon the subjects referred to. The order of reference is as broad as it could be made, and covers every subject of inquiry, provided the objections filed to the account raise the issue*. The proposed further objection to this account is the affidavit of Mrs. Fithian. To propose a further objection in this form is very questionable practice; it should have been formally worded as an objection, and not presented as an affidavit for one purpose, and as an objection for another; such lack of systematic preparation of papers confuses the court and obscures the record. In this case, however, I shall, for once, disregard form and defer to substance, and therefore I shall *736 consider the affidavit as a further objection to the amended account filed June 9, 1887.
Section 2606, Code of Civil Procedure, provides that where an executor, administrator, guardian or testamentary-trustee, dies, the surrogate’s court has the same jurisdiction, upon the petition of his successor, or of a surviving executor, administrator or guardian, or of a creditor, or person interested in the estate, or of the guardian’s ward, to compel the executor or administrator of decedent to account which it would have against the decedent if his letters had been revoked by á surrogate’s decree. * * * The surrogate’s court has also jurisdiction to compel the executor, at any time, to deliver over any of the trust property which has come into his possession, or is under his control. * * *
If Clark received $30,000 as executor, or as partner, and invested the same for the benefit of his wife, it is well settled that this would simply be a resulting trust in favor of the original cestui que trust, or in other words, that his wife would be a constructive trustee.
Section 2606 is construed in Re Fithian (44 Hun, 457); Brady, J., says: “The design of this section is to enlarge the sphere of the accounting. The surrogate may, upon the accounting, determine what the representative executor owes to the trust, but the decree shall not be evidence conclusive that the representative executor has the assets to pay.”
There is no doubt but what Mrs. Clark stands in the place of her husband regarding any matter affecting the Fithian estate, and he could undoubtedly have been examined in reference to this fund. Code, §§ 2739, 2735.
In Matter of Adams (2 Redf., 66), deceased transferred a bond and mortgage in his lifetime to a third party, who transferred to deceased’s wife; she was appointed executrix and did not account for same; the court held that it had the power to compel her to account for the same, it being shown that the transfer was in fraud of creditors.
In Adams case the wife received the bond as constructive trustee during the lifetime of the husband, and the court held she could be examined concerning the same, and must account.
This case is claimed by respondent’s counsel to have no application on the ground:
First—That that was a proceeding in which the executrix was accounting for herself and not for a decedent. There can be no difference, under the adjudication in 44 Hun, 457 (supra), and my understanding ' of section 2606, between an executor of an executor and an executor of the testator upon the point of accounting for the trust fund.
Second—Because, in the Adams case, there was no contest; that she admitted all the facts, etc. I do not think *737 this criticism is warranted. Mrs. Fithian has certainly a right to examine Mrs. Clark as to the disposition by her or by her deceased husband of property she claims belonged to the estate of her testator.
Third—That the Adams case was admitted to be difficult. This cannot be regarded as serious. Although Surrogate Hulse admitted the question was a difficult one, he found no trouble evidently in deciding the matter in a very firm and clear opinion, in which I fully concur.
Fourth—His fourth objection that no case can be cited sustaining the position taken in the Adams case is completely answered by the fact that it has never been overruled, and counsel presents no case holding a contrary view; nor have I been able to find one.
In regard to the point made by respondent’s counsel that Mrs. Fithian cannot file other objections, and the reference must go on the original objections already made by her, he is right technically; she cannot file further objections without an order, but she can apply to the court for leave to do so, and this motion on her part amounts to such an application. The referee, with commendable caution in 'respect of his powers under the objections filed, was justified in refusing to permit the examination of Mrs. Clark. I am inclined to believe that he has the power as such referee, under sections 1018 and 2546 of the Code, to entertain a motion to amend an objection and to allow a further objection.
There is no doubt about the power of the surrogate, however, to grant such relief in a proper case, as has been held repeatedly. See Boughton et al. v. Flint (74 N. Y., 476), where this language is used and the rule very clearly stated, viz.: “If the objections filed are insufficient, the surrogate may allow further objections to be filed from time to time; but this is not within the power of an auditor.” Quaere: “ Has not a referee power greater than those of an auditor?” See also Peck v. Sherwood, 56 N. Y., 615.
The motion is granted.